**Roger Vann SMITH, Faye D. Smith, Appellants,**

v.

**FAIRFAX VILLAGE CONDOMINIUM VIII BOARD OF DIRECTORS, et al., Appellees.**

Nos. 96–CV–42, 96–CV–491.

District of Columbia Court of Appeals.

Argued Oct. 19, 1999.

Decided June 21, 2001.

Roger Vann Smith and Faye D. Smith, pro se.

Joseph Michael Hannon, Jr., with whom Matthew W. Carlson, Washington, DC, was on the brief, for appellees.

Before WAGNER, Chief Judge, and TERRY and SCHWELB, Associate Judges.

WAGNER, Chief Judge:

Appellants, Roger Vann Smith and Faye Smith, seek reversal of an order dismissing their complaint for wrongful foreclosure, entering a default against them on a complaint for possession of real property and counterclaim to quiet title, and striking their plea of title for failure to make discovery. Appellants argue that the trial court abused its discretion in taking these actions under Super.Ct.Civ.R. 37 and 41(b) because: (1) no motion to compel discovery had been entered; (2) the circumstances were not severe enough to warrant the extreme sanctions imposed; and (3) the trial court failed to consider lesser sanctions. We conclude that the trial court abused its discretion in that it failed to consider lesser sanctions and to determine whether Fairfax Village was prejudiced by any failure of the Smiths to comply with discovery requests. Therefore, we reverse and remand for further proceedings consistent with this opinion.

I.

Fairfax Village foreclosed on a condominium owned by the Smiths because of their failure to pay condominium assessments. Fairfax Village purchased the condominium at the foreclosure sale. The Smiths filed in the Superior Court an action against the Board of Directors of Fairfax Village (Board) alleging wrongful foreclosure (94–CA–11200). The Smiths contended that they had disputed the amount of the condominium assessments and that the time for the Board to assert a lien and foreclose had lapsed under D.C.Code § 45–1853(e) (1996 Repl.).[1]

---

1. D.C.Code § 45–1853(e) provides:

The lien for assessments provided herein

Fairfax Village filed a counterclaim to quiet title. On January 20, 1995, the Smiths filed a new case alleging wrongful foreclosure, libel, slander, and intentional infliction of emotional distress (95–CA–481). By consent of the parties, the two cases were consolidated on April 21, 1995. Subsequently, Fairfax Village filed a complaint for possession of the property in the Landlord Tenant Branch of the Superior Court (95–LT–10043). The Smiths filed a Plea of Title and an Undertaking in response. All three cases were consolidated.

The trial court (Judge Abrecht) entered a scheduling order setting various deadlines, including a discovery deadline of August 21, 1995; motions to be filed by September 6, 1995; with mediation/case evaluation to occur between October 21, 1995 and November 11, 1995. The parties filed and served discovery requests upon each other, and disputes arose between them. On May 25, 1995, Fairfax Village filed a motion to compel the Smiths to respond to its first request for production of documents. Fairfax Village reported to the court that the Smiths' counsel had responded that the documents requested could be reviewed in the court jacket; however, Fairfax Village informed the Smiths' counsel that the court file was not readily available and that the Smiths were obligated to respond. The Smiths filed a motion to strike the motion to compel, contending that the checks requested by Fairfax Village were not readily available to them and that they had submitted copies to the court (front and back) during a hearing on a motion for a temporary restraining order.

On July 24, 1995, the Smiths filed a motion to compel the Fairfax Village parties to respond to interrogatories and requests for production of documents and for admissions that had been mailed to Fairfax Village on June 20, 1995. On July 25, 1995, the Fairfax Village parties filed a motion for leave to late file their responses to the request for admissions, to extend the time to respond to the outstanding discovery, and an opposition to the motion to compel. Fairfax Village indicated that their responses were not due until July 24th, the date on which the Smiths filed their motion, but that they were nevertheless unable to respond timely due to primary counsel in the case taking sabbatical leave from defense counsel's law firm. Fairfax Village requested an extension of time of two weeks to respond fully. The Smiths filed a second motion to compel discovery, contending that responses provided by Fairfax Village were inadequate or non-responsive. On September 1, 1995, Fairfax Village filed a motion to compel discovery, contending that the Smiths failed to answer some of the interrogatories, in whole or in part; that they failed to appear for depositions scheduled and rescheduled for August 9, 1995 and September 7, 1995, respectively; and that they indicated that they would not be available until the week of October 2, 1995. The trial court (Judge Abrecht) ordered the parties to meet and attempt to resolve their discovery disputes before October 5, 1995 or appear before the court for a hearing on October 13, 1995.

On October 10, 1995, the parties filed a "Consent Motion to Extend Time for/Reschedule Mediation and Reflecting Meeting Addressing Discovery Disputes," in which they informed the court that the parties had resolved their discovery dis-

---

shall lapse and be of no further effect as to unpaid assessments (or installments thereof) together with interest accrued thereon and late charges, if any, if such lien is not discharged or if foreclosure or other pro-

ceedings to enforce the lien have not been instituted within 3 years from the date such assessment (or any installment thereof) become due and payable.

putes and that no hearing was necessary. They also requested that the mediation scheduled for November 1, 1995 be postponed to a date after December 1, 1995 or a date set by the court's Assignment Office. In an order filed on November 1, 1995 and docketed and mailed to the parties on November 3, 1995, the trial court denied the parties' consent motion as "untimely and not well-founded." The court recited the provision of its earlier order requiring the parties to appear on October 13th if discovery disputes had not been resolved, noted that the parties had notified the court by praecipe that the disputes had been resolved, and stated that the court had not authorized an extension of the discovery deadline or a continuance of the mediation date. Therefore, the court ordered the parties to appear for mediation on November 1, 1995 as previously scheduled. The Fairfax Village parties appeared with counsel for mediation as ordered, but the Smiths did not. Prior to the entry of the court's order, Fairfax had noticed depositions for the Smiths for November 8, 1995, pursuant to their mutual agreement, but the Smiths did not appear on the later date.

Thereafter, Fairfax Village filed a motion to dismiss the Smiths' two complaints, to enter a default against the Smiths on Fairfax Village's complaint to quiet title and on its complaint for possession, and to dismiss the Smiths' plea of title on the ground of their failure to make discovery. As reasons for the motion, Fairfax Village cited the Smiths' failure to participate in court ordered mediation and to appear for depositions. The Smiths filed an opposition in which they contended that the parties had agreed to take the depositions of defendants Eloise Campbell, Gloria White and Viola Johnson on November 8, 1995 and that counsel for Fairfax Village in-

formed Mr. Smith that none of these defendants would appear to be deposed on that date. The Smiths also contended that Mrs. Smith had become grievously ill. Defense counsel had responded by letter to the request for depositions that the Smiths' notice was not reasonable and that the date conflicted with the date set for the Smiths' depositions.

On December 15, 1995, the trial court (Judge Abrecht) granted the motion of Fairfax Village and dismissed the Smiths' complaints with prejudice pursuant to Super.Ct.Civ.R. 37(b)(2)(c) and (d) and 41(b) and entered a default against them on Fairfax Village's counterclaim to quiet title and for possession, subject to ex parte proof. The Smiths appealed from the trial court's order in appeal no. 96–CV–42. The Smiths also filed a petition for reconsideration on January 29, 1996, to which Fairfax Village filed an opposition on February 12, 1996. The Smiths claimed that their neglect, if any, on November 1, 1995, the scheduled mediation date, and the November 8th date set for their depositions, was excusable based upon their consent agreement, and Fairfax Village's breach of the parties' agreement to allow depositions of defense parties or witnesses on that date. Fairfax Village opposed the motion on the grounds that the Smiths were not entitled to relief under Super.Ct.Civ.R. 60, as requested, and that they should have proceeded by "motion" instead of by "petition." The trial court (Judge Lee Satterfield) denied the motion on the grounds that the Smiths had failed to comply with Super.Ct.Civ.R. 12 I and that the grounds stated did not warrant relief.

Following an ex parte hearing as previously ordered, which the Smiths attended without counsel,[2] the trial court (Judge Satterfield) entered an order granting

2. Smith had filed a praecipe on January 29, 1996 stating that he was representing himself and his wife, and counsel filed a praecipe withdrawing on February 26, 1996.

Fairfax Village title in fee simple to the condominium and assessing damages against the Smiths, which included $600 per month from April 15, 1995 until the date that the Smiths vacate the property, payable from funds on deposit in the registry of the court plus interest at the rate of 6% per annum from December 12, 1995 on $20,826.24 (the amount that the condominium association paid to the Smiths' lender) and legal fees pursuant to the By Laws of the condominium association in the amount of $1,858.25. The Smiths filed a motion requesting the court to stay the execution of the damages award and to eliminate the provision for a supersedeas bond until their appeal was resolved. The trial court denied the stay and required the Smiths to post a supersedeas bond in the amount of $4000. The Smiths filed a second appeal (96 CV 491) from the court's order. The two appeals were consolidated by this court.

## II.

The Smiths argue that the trial court abused its discretion in entering a default against them and in dismissing their claims pursuant to Super.Ct.Civ.R. 37 as a sanction for failure to comply with discovery requests and in entering a dismissal and default pursuant to Rule 41(b). The Smiths contend that the trial court erred in failing to consider lesser sanctions and in imposing such an extreme sanction, since Fairfax Village suffered no prejudice. They contend that Fairfax Village breached an agreement to make the Board's officers available for deposition, which presumably excused their own compliance with deposition requests. They further contend that the imposition of sanctions was premature because Fairfax Village did not file a motion to compel discovery, and

the court had not entered an order compelling discovery. Fairfax Village argues that no separate order compelling discovery is required as a prerequisite to the imposition of sanctions under the circumstances of this case. It further contends that the trial court acted within its discretion in imposing dismissal and default sanctions because the record demonstrates that the Smiths' refusal to make discovery was willful.

### A. Effect of Lack of Order Compelling Discovery

 We can dispose summarily of the Smiths' claim that the trial court's order imposing sanctions must be reversed because it was not preceded by a motion and order compelling discovery. We rejected this argument in *Perry v. Sera,* 623 A.2d 1210 (D.C.1993). In *Perry,* appellant argued that the court may not impose sanctions under Super.Ct.Civ.R. 37(b) unless the movant first seeks and obtains an order compelling discovery under Super.Ct.Civ.R. 37(a). We held that, by its terms, Super.Ct.Civ.R. 37(b)(2), which provides a range of sanctions for failure to comply with discovery orders, "does not limit itself to allowing sanctions only when an order compelling discovery under Rule 37(a) has been made." [3] *Perry,* 623 A.2d at 1216. Although a motion to compel under Rule 37(a) is not necessary, an order is a prerequisite to sanctions. *Id.* (citing *Henneke v. Sommer,* 431 A.2d 6, 8 (D.C. 1981)). However, an order requiring discovery to be completed by a certain date is sufficient to invoke the provisions for sanctions under Super.Ct.Civ.R. 37(b)(2). *Id.* In this case, the trial court entered a scheduling order designating dates by which the parties must complete discovery

---

**3.** Rule 37(a) sets forth procedures for a party to seek an order compelling discovery, while subsection (b)(2) provides a range of sanctions which can be imposed by the court when a party does not comply with discovery ordered by the court. *Perry, supra,* 623 A.2d at 1215.

pursuant to Super.Ct.Civ.R. 26(g)(5). We held that Rule 37(b) sanctions are available for violating such discovery scheduling orders. *Id.* Therefore, we turn to consideration of the Smiths' remaining arguments challenging the imposition of the extreme sanctions of dismissal and default.

B. *Sanctions Under Super.Ct.Civ.R. 37*[4]

■ Among the sanctions that a trial court can impose for failure of a party to comply with discovery orders are dismissal or the entry of a default. Super.Ct.Civ.R. 37(b)(2)(C); *Perry, supra,* 623 A.2d at 1218 (citing *Ungar Motors v. Abdemoulaie,* 463 A.2d 686, 687 (D.C.1983)). Such sanctions are extreme, and therefore should be imposed only upon a showing of "severe circumstances." *Iannucci v. Pearlstein,* 629 A.2d 555, 559 (D.C.1993) (citing *District of Columbia v. Greene,* 539 A.2d 1082, 1083–84 (D.C.1988)) (other citations omitted). In determining whether such circumstances exist, the court considers: "1) whether the opposing party suffered prejudice due to the failure to respond to discovery requests and 2) whether the failure was 'willfull'—defined as a conscious or intentional failure to act as opposed to accidental or involuntary noncompliance." *Perry,* 623 A.2d at 1218 (citing *Braxton v. Howard Univ.,* 472 A.2d 1363, 1365 (D.C. 1984)); *Iannucci,* 629 A.2d at 559 (citing *Lyons v. Jordan,* 524 A.2d 1199, 1201 (D.C.1987)) (other citations omitted). The court must also consider whether "less severe sanctions will not suffice, notwith-standing 'the societal preference for a decision on the merits.'" *Iannucci,* 629 A.2d at 559 (citations omitted). Absent evidence of such severe circumstances, the trial court abuses its discretion when it imposes the extreme sanctions of default or dismissal. *Perry,* 623 A.2d at 1218 (citation omitted). Any sanction imposed should be tailored to the circumstances. *See Bussell v. Berkshire Assocs.,* 626 A.2d 22, 24 (D.C.1993). In other words, the sanction should not be " 'too strict or unnecessary under the circumstances.'" *Id.* (quoting *Himmelfarb v. Greenspoon,* 411 A.2d 979, 982 (D.C.1980) (quoting *Dodson v. Evans,* 204 A.2d 338, 341 (D.C.1964))). We review the trial court's actions and the record in light of these principles. In doing so, we evaluate all pretrial proceedings before the sanctions were imposed. *Perry,* 623 A.2d at 1218 (citing *Hackney v. Sheeskin,* 503 A.2d 1249, 1252 (D.C.1986)).

■ The trial court's order imposing sanctions does not indicate that it considered lesser sanctions or why it chose dismissal and default over less severe sanctions. While the court is not required to provide reasons for not choosing less severe sanctions, if it does not provide reasons, "appellate scrutiny of that choice will be stricter." *Perry, supra,* 623 A.2d at 1218 (citing *Ungar Motors, supra,* 463 A.2d at 689) (other citations omitted). Therefore, we examine its action under that strict standard.

4. Rule 37 provides in pertinent part:

**(b) Failure to Comply With Order.**

(2) *Sanctions by This Court.* If a party . . . designated . . . to testify on behalf of a party fails to obey an order to provide or permit discovery . . . the Court may make such orders in regard to the failure as are just, including among others the following:

(C) An order . . . dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; . . . .

**(d) Failure of Party to Attend at Own Deposition or Serve Answers to Interrogatories or Respond to Request for Inspection.** If a party . . . designated . . . to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice . . . the Court on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this Rule.

Here, the trial court stated that it was granting the motion because of the Smiths' failure to appear for depositions and for mediation. In support of its motion, Fairfax Village cited the Smiths' failure to appear for depositions both before and after the parties reached an agreement resolving their respective discovery complaints. Significantly, prior to the filing of the motion, both sides had discovery disputes, and they worked out an agreement resolving them, which they set forth in a consent motion. The Smiths had provided some discovery, and they claimed that Fairfax Village had failed to comply with some discovery. In the consent motion, the parties acknowledged that it might take several weeks to obtain the documents and information necessary to resolve their outstanding discovery disputes because of the age and inaccessibility of the information. Further, the parties stated that they had "agreed to schedule depositions of parties and all material witnesses for November 8, 1995 due to the fact that such date was the first date that all counsel and deponents would be available." In opposition to the motion for sanctions, the Smiths cited as their reasons for failing to go forward with depositions on November 8th as agreed, the refusal of Fairfax Village to make its witnesses available as promised on that date, and the illness of Ms. Smith. The Smiths also indicated that they had provided 33 exhibits as agreed and had responded to interrogatories, which they would supplement if Fairfax Village requested additional information.

 In assessing prejudice, the trial court should consider whether the failure of one party to provide information interferes with the ability of the other party to prepare for trial and, here, mediation. *See Perry, supra,* 623 A.2d at 1220. The record suggests that the Smiths had provided significant discovery; therefore, some informed assessment of the prejudicial impact of the outstanding discovery on

Fairfax Village should have been, but was not, made. Moreover, in this case Fairfax Village appears to have been in default on some of the discovery, and neither side was in a position to proceed with completion of discovery when Fairfax Village filed its sanctions motion. It was for that reason that they agreed to a delayed discovery schedule and postponement of mediation. "In such circumstances, to lay sole blame upon one party for the ... delay through a dismissal with prejudice would seem justified only by egregious conduct by that party; otherwise, the windfall to an otherwise potentially liable [party] might be deemed disproportionate." *Van Man v. District of Columbia,* 663 A.2d 1245, 1248 (D.C.1995).

We do not believe that such egregious conduct is present here. The parties had worked out various discovery disputes, embodied their agreement in a consent motion, and requested an extension of time for discovery and mediation, but the trial court rejected it. The court's action, which was taken formally only after the scheduled mediation date, left the parties in a position where they could not complete discovery before the mediation date, according to their consent motion. While it may be the fault of the parties for not having resolved their disagreements well in advance of the date set by the court, given the developments here, it cannot be said that the Smiths' conduct was egregious. Fairfax Village contends that it is obvious that they suffered the prejudice of incurring attorney's fees and costs for the scheduled depositions. Such prejudice could be addressed by the award of costs and attorney's fees. However, there is no indication that the court considered this lesser sanction.

 Of course, the court must consider prejudice not only to the immediate parties, but also to the court system as a

whole. *Van Man, supra,* 663 A.2d at 1247. " 'When a plaintiff is personally responsible for this type of delay, he or she prejudices not only the defendant but also the ability of other persons ... to utilize the system.' " *Id.* (citations omitted). However, even considering that kind of prejudice, it would be unfair to impose the whole burden through dismissal on one party where the other party is not free from blame. *See id.* at 1248.

 That does not mean that the Smiths' violation of discovery orders must go unsanctioned. *See Van Man, supra,* 663 A.2d at 1248. There are lesser sanctions which can be considered. *See id.* A proper exercise of discretion in ruling upon a sanctions motion requires consideration of lesser sanctions, particularly in order to tailor the sanction to the transgression. *See Iannucci, supra,* 629 A.2d at 559. There is no indication that the trial court actually considered lesser sanctions in this case. Fairfax Village requested in its motion the most severe sanctions, and upon consideration of that motion, the trial court granted the request.

 Finally, the court must consider whether the default of the party failing to make discovery is willful. *Perry, supra,* 623 A.2d at 1218. The trial court did not indicate in its order whether it deemed the

Smiths' conduct to be willful. However, since it imposed the most extreme sanction, we will assume that it did. To show willfulness within the context of a failure to make discovery requires only a conscious failure to provide the requested information or to appear for deposition as opposed to accidental or involuntary noncompliance. *Chapman v. Norwind,* 653 A.2d 383, 386 (D.C.1995) (citing *Perry, supra,* 623 A.2d at 1218). The Smiths claimed that they could not appear for their depositions on November 8th because Fairfax Village had refused to make its witnesses available at the same time as required by their agreement.[5] While the reason explains the Smiths' failure, it does not excuse their failure to comply with a properly noticed deposition. They should have appeared or sought court intervention under the rules for any failure of Fairfax Village to make discovery. Whether this amounts to sufficiently willful conduct on the part of the Smiths warranting extreme sanctions, where it is contended that the moving party was in violation of the same agreement, is debatable.[6] However, even assuming willfulness, in the particular circumstances of this case, where the court made no finding of prejudice and where there is no indication that lesser sanctions were considered, we hold that

---

5. In its motion to dismiss, Fairfax Village also included the Smiths' failure to appear at depositions on which antedated the parties' settlement of their discovery disputes. The parties had rescheduled the Smiths' deposition for August 9, 1995 by consent to September 7th. The Smiths notified Fairfax Village two weeks in advance of October 2, 1995 that they would not be available until that date. Fairfax Village did not agree to a postponement prior to the September 7th scheduled date but, in conformity with the order of September 19, 1995, the parties met and agreed upon November 8, 1995 as the date on which all parties and witnesses would be deposed. The parties having changed the first deposition date by mutual consent and having ultimately reached a satisfactory resolution of all discovery disputes, we do not believe that the Smiths' failure to appear on the earlier deposition dates warrants dismissal of their complaint. We therefore consider the issue primarily in relation to the Smiths' failure to appear on November 8th.

6. The Smiths also claimed that they could not appear for the deposition because of Ms. Smith's illness and Mr. Smith's obligation to attend to her. However, the Smiths did not make the argument until after the court had entered the default. Fairfax Village challenges the timeliness of the claim. In light of our disposition, we need not resolve the issue.

the trial court's order entering a default and dismissing the Smiths' claims must be vacated.

### C. Dismissal and Default Under Super.Ct.Civ.R. 41(b) [7]

The trial court also dismissed the Smiths' complaints and plea of title under Super.Ct.Civ.R. 41(b). Pursuant to that rule, the trial court can dismiss involuntarily an action " '[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court.' " Whether to impose such a sanction is left to the discretion of the trial court, and its decision will be overturned only where the court abuses its discretion or " 'impos[es] a penalty too strict or unnecessary under the circumstances.' " *Solomon v. Fairfax Village Condominium IV Unit Owner's Ass'n,* 621 A.2d 378, 379 (D.C.1993) (quoting *Braxton, supra,* 472 A.2d at 1365 (other citations omitted)). Thus, the sanction should be used sparingly and only " 'upon some showing of willful and deliberate delay by the plaintiff' and a determination that 'appellee was prejudiced by appellant's delay.' " *Id.* at 379 (quoting *Durham v. District of Columbia,* 494 A.2d 1346, 1351 (D.C.1985)) (other citations omitted). "Given the severity of dismissal as a sanction ... and the oft-stated preference for trial on the merits, this discretion must be exercised carefully and in accordance with standards identified in our cases." *Van Man, supra,* 663 A.2d at 1247 (quoting *Wolfe v. Fine,* 618 A.2d 169, 173 (D.C. 1992)) (quoting *Techniarts Video v. 1631 Kalorama Assocs.,* 572 A.2d 1051, 1054 (D.C.1990)). Among the factors which the trial court should consider are:

(1) the nature of the party's conduct, including whether it was willful; (2) the length of any delay in complying with the court's order; (3) the reasons for the delay; and (4) any prejudice to the opposing party.

*District of Columbia v. Serafin,* 617 A.2d 516, 519 (D.C.1992) (citing *Techniarts, supra,* 572 A.2d at 1054) (other citation omitted). "Dismissal is warranted only 'upon some showing of willful and deliberate delay by the plaintiff,' and a determination that '[defendant] was prejudiced by [plaintiff's] delay.' " *Solomon, supra,* 621 A.2d at 379 (quoting *Durham, supra,* 494 A.2d at 1351). Against that standard, we consider whether the trial court abused its discretion in granting dismissal and default under Rule 41(b).

In deciding whether the Smiths' transgressions were willful, deliberate and prejudicial to Fairfax Village, the factual context is significant; therefore, we summarize the facts again briefly. Mediation was set early in the proceeding for November 1st. In the meantime, both sides had discovery disputes which they sought to resolve by agreement as ordered by the court. They were ordered to resolve the disputes by October 5, 1995 or appear in court on October 13th for a hearing. On October 10th, the parties filed a consent motion indicating that they had resolved their disputes and requesting a postponement of the November 1st mediation session in order to effectuate the terms of their agreement and because meaningful mediation could not occur in absence of completion of discovery. While the parties could not know definitively whether the trial court would accept their amicable resolution of the discovery issues, it was not unreasonable for them to anticipate that it would, and both sides

---

7. **RULE 41. DISMISSAL OF ACTIONS**
(b) **Involuntary Dismissal: Effect Thereof.** For failure of the plaintiff to prosecute or to comply with these Rules or any order of Court, a defendant may move for dismissal of an action or any claim against the defendant or the Court may, sua sponte enter an order dismissing the action or any claim therein.

labored under the same misapprehension. The trial court's order rejecting the parties' resolution of their discovery disputes and denying a request for postponement of the November 1st mediation and extension of discovery deadlines was not docketed and mailed to them until November 3, 1995. Fairfax Village states that it was notified by telephone that the court had rejected the consent motion, and they appeared for mediation. The record does not show that the Smiths were notified of the denial of the continuance request and the court's insistence upon adherence to the November 1st mediation date.[8] Nevertheless, the court's original scheduling order states that the parties must adhere strictly to the court's schedule and that deadlines could not be changed by stipulation of the parties without court approval.[9] Therefore, the parties should have understood that in the absence of an order of the court approving their stipulation, mediation must proceed as ordered. Accordingly, we are not prepared to treat the Smiths' non-appearance at mediation as a mere accidental oversight. However, we cannot agree that their failure to appear was so willful and contumacious that the extreme sanction of dismissal was warranted. *See Solomon, supra,* 621 A.2d at 379 (citation omitted). The situation was sufficiently unusual to render some measure of confusion at least understandable, a point that the trial court's order of dismissal and default did not address.

As mentioned, in considering Rule 37 sanctions, the trial court did not indicate that it had considered lesser sanctions nor did it weigh the prejudice element. Both are essential factors which must be considered in determining to impose the extreme sanction of involuntary dismissal or default. Failure to consider lesser sanctions alone has been held to be sufficient to warrant remand. *Serafin, supra,* 617 A.2d at 520 (citing *LaPrade v. Lehman,* 490 A.2d 1151, 1155–56 (D.C.1985)). The prejudice factor was not, but should have been, considered in assessing the appropriate actions under Rule 41(b). *See Serafin,* 617 A.2d at 519.

The Smiths also failed to appear for their deposition scheduled by consent for November 8th. One of the reasons stated by the court for entering a default and dismissing the case under Rule 41, was also their failure to appear for depositions.[10] Whether this failure, in light of the Smiths' reasons for failing to appear, is sufficient to warrant the extreme sanction of dismissal and default is an issue which the trial court can weigh on remand.

**8.** The court's order indicates that it was signed on October 31, 1995, but as previously indicated, it was not filed until November 1st, and not docketed and mailed until November 3rd. In a petition for relief under Rule 60, the Smiths asserted that any neglect on their part was excusable because of the parties' agreement regarding the schedule which was rejected by the court in the order docketed after the mediation date.

**9.** The initial scheduling order did not set a specific date for mediation, although it indicated that it would occur between October 21 and November 21, 1995.

**10.** At the time of the deposition, counsel for Fairfax Village made the following statement that was reported by the court reporter: "I have just now taken a phone call from Mr. Daniel, who informed me that his clients, Roger and Faye Smith, advise him that they refuse to appear at this deposition this morning. Mr. Daniel also just informed me that under these circumstances, he can no longer in good conscience represent Mr. and Mrs. Smith because of their refusal to live up to the most basic obligation, to cooperate with the discovery...." However, on February 22, 1996, counsel filed a Praecipe of Withdrawal stating only that Smith had previously filed a praecipe stating that he was representing himself and that Smith was capable of processing his own legal affairs.

For the foregoing reasons, the case is reversed and remanded to the trial court to vacate the judgment and for further proceedings consistent with this opinion. It is further ordered the trial court's order denying the Petition to Forego Posting a Separate Supersedeas Bond to Cover the Costs of the appeal challenged in appeal no. 96–CV–491 is affirmed.[11]

*So ordered.*

**In re D.D., Appellant.**

**No. 98–FS–2.**

District of Columbia Court of Appeals.

Argued May 20, 1999.

Decided June 21, 2001.

Deborah L. Harris, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Sidney R. Bixler, Assistant Corporation Counsel, with whom John M. Ferren, Corporation Counsel at the time the brief was filed, and Robert R. Rigsby, Deputy Corporation Counsel at the time the brief was filed, and Rosalyn Calbert Groce, Director Policy and Appeals Branch, were on the brief, for the District of Columbia.

Before WAGNER, Chief Judge, and RUIZ, Associate Judge, and MACK, Senior Judge.

---

**11.** Smith does not present arguments in support of appeal No. 96–CV–491. In that case Smith appealed Judge Satterfield's order (1) denying Smith's petition to forego posting a separate supersedeas bond to cover the costs of appeal No. 96–CV–42;(2) requiring Smith to post an additional bond; and (3) enjoining Roger Vann Smith from representing his wife Faye Smith. Therefore, we affirm it summarily.